# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUAN GORDON,<br>            Plaintiff<br><br>            v.<br><br>KENNETH COURTER, *et al.*<br>            Defendants | Civil Action No. 14-1382 (CKK) |

## MEMORANDUM OPINION
(July 31, 2015)

Plaintiff Juan Gordon, who is proceeding *pro se*, submitted a Freedom of Information Act ("FOIA") request to the Criminal Division of the U.S. Department of Justice ("DOJ") seeking a copy of the "Title III authorization memorandums for electronic surveillance" of a telephone number associated with a phone used by Plaintiff. Dissatisfied with DOJ's refusal to search for responsive documents pursuant to 5 U.S.C. § 552(b)(3), Plaintiff filed suit against the agency on August 13, 2014. Presently before the Court are Defendants' [6] Motion for Summary Judgment and Plaintiff's [18] Motion to Amend Complaint. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court GRANTS Defendants' [6] Motion for Summary Judgment and DENIES Plaintiff's [18] Motion to Amend Complaint. The Court finds that Defendants have satisfied the requirements of both FOIA and the Privacy Act. The

---

[1] The Court's consideration has focused on the following documents:
- Defs.' Mot. for Summary Judgment ("Defs.' Mot."), ECF No. 6;
- Declaration of Peter C. Sprung ("Sprung Decl."), ECF No. 6-2;
- Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), ECF No. 13;
- Defs.' Reply to Pl.'s Opp'n ("Defs.' Reply"), ECF No. 14;
- Pl.'s Mot. to Amend Compl. ("Mot. to Am."), ECF No. 18; and
- Defs.' Opp'n to Motion to Amend ("Defs.' Am. Opp'n"), ECF No. 19.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

Court also concludes that Plaintiff's proposed Amended Complaint would cause undue delay, fundamentally alter the nature of the suit, and likely be futile.

## I. BACKGROUND

Plaintiff Juan Gordon is awaiting trial on a federal indictment charging him with two drug-related charges. Sprung Decl. ¶ 6. By letter dated January 7, 2014, Plaintiff submitted a FOIA request for:

> [A]n authentic Department of Justice (DOJ) Criminal Division Office of Enforcement Operation (OEO) copy of the Title III authorization memorandums, and all other documents tied to the approval of these memorandums for the electronic surveillance for the following telephone numbers that I am alleged to have had my private conversations intercepted, monitored and disclosed over: (412) 586-8769.

Sprung Decl., Ex. A. Plaintiff was not the registered subscriber of this number. Sprung Decl. ¶ 6. In a letter dated February 18, 2014, the Criminal Division responded to Plaintiff, informing him that, to the extent that any responsive records existed, they were exempt from disclosure pursuant to 5 U.S.C. § 552(b)(3) ("Exemption 3"). *Id.* ¶ 7. Exemption 3 exempts from FOIA disclosure records that are "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). DOJ explained that the specific statute exempting the records from FOIA disclosure is Title III of the Omnibus Crime Control and Safe Streets Act ("Title III"), 18 U.S.C. §§ 2510-2521, and informed Plaintiff of his right to appeal the decision to DOJ's Office of Information and Policy ("OIP"). Sprung Decl. ¶ 7.

On March 18, 2014, Plaintiff appealed the decision to OIP. *Id.* at ¶ 8. On July 8, 2014, OIP affirmed the determination to withhold records, but on modified grounds. *Id.* at ¶ 9. OIP stated that the records requested were exempt from disclosure under Exemption 5's work product and deliberative process privileges and Exemptions 6 and 7(C)'s personal privacy protections. *Id.* Still contending that DOJ's response to Plaintiff's request did not comply with FOIA or the

Privacy Act, *see* Compl. ¶ 11, Plaintiff filed this action on August 13, 2014. *See* Compl. 1.[2]

While this suit was pending, DOJ conducted a search of two records systems and located

responsive records. *See* Defs.' Mot. 4. The agency ultimately released in full 420 pages and

withheld in full approximately 903 others. *See* Sprung Decl. ¶ 37. DOJ then moved for summary

judgment.

Following briefing on Defendant's Motion for Summary Judgment, Plaintiff filed a

motion for leave to amend his complaint, seeking to add additional defendants and to add several

claims—pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403

U.S. 388 (1971); the Federal Tort Claims Act ("FTCA"); 42 U.S.C. § 1985(3); and 18 U.S.C.

§ 2520—as well as seeking monetary damages. Mot. to Am. 2, 19 ¶ F. Defendant opposes that

motion.

## II. LEGAL STANDARD

### A. Motion for Summary Judgment

Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency

action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)

(citation and internal quotation marks omitted). Congress remained sensitive to the need to

achieve balance between these objectives and the potential that "legitimate governmental and

private interests could be harmed by release of certain types of information." *Critical Mass*

*Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc)

---

[2] The Complaint names as defendants the Chief of the Criminal Division FOIA/PA Unit, as well as the Director of the Office of Information Policy ("OIP"). Defendants correctly note that neither OIP nor the individual defendants are proper parties. *See Hammouda v. U.S. Dep't of Justice Office of Information Policy*, 920 F. Supp. 2d 16, 22 (D.D.C. 2013); *Martinez v. BOP*, 444 F.3d 620, 624 (D.C. Cir. 2006). However, Defendants have not moved to dismiss these parties, and the Court will not do so *sua sponte*.

(citation and internal quotation marks omitted). To that end, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for specific categories of material." *Milner v. Dep't of Navy*, 562 U.S. 562, 564-66 (2011). Ultimately, "disclosure, not secrecy, is the dominant objective of the Act." *Rose*, 425 U.S. at 361. For this reason, the "exemptions are explicitly made exclusive, and must be narrowly construed." *Milner*, 562 U.S. at 565 (citations and internal quotation marks omitted).

When presented with a motion for summary judgment in this context, the district court must conduct a de novo review of the record, which requires the court to "ascertain whether the agency has sustained its burden of demonstrating that the documents requested … are exempt from disclosure under the FOIA." *Multi Ag Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation omitted). The burden is on the agency to justify its response to the plaintiff's request. 5 U.S.C. § 552(a)(4)(B). "An agency may sustain its burden by means of affidavits, but only if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Multi Ag Media*, 515 F.3d at 1227 (citation omitted). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civil Liberties Union v. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted). "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011) (citation omitted). Summary judgment is proper when the pleadings, the

discovery materials on file, and any affidavits or declarations "show[ ] that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).

## B.  Motion to Amend

Under the Federal Rules of Civil Procedure, a party may amend its pleadings once as a

matter of course within twenty-one days after service or within twenty-one days after service of a

responsive pleading. Fed. R. Civ. P. 15(a)(1). Where, as here, a party seeks to amend its

pleadings outside that time period, they may do so only with the opposing party's written consent

or the district court's leave. Fed. R. Civ. P. 15(a)(2). The decision whether to grant leave to

amend a complaint is within the discretion of the district court, but leave should be freely given

unless there is a good reason to the contrary. *Willoughby v. Potomac Elec. Power Co.*, 100 F.3d

999, 1003 (D.C. Cir. 1996).

"When evaluating whether to grant leave to amend, the Court must consider (1) undue

delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4) bad faith; and (5)

whether the plaintiff has previously amended the complaint." *Howell v. Gray*, 843 F. Supp. 2d

49, 54 (D.D.C. 2012) (citing *Atchinson v. District of Columbia*, 73 F.3d 418 (D.C. Cir. 1996));

*see also Foman v. Davis*, 371 U.S. 178, 182 (1962). With respect to an amendment causing

undue delay, "[c]ourts generally consider the relation of the proposed amended complaint to the

original complaint, favoring proposed complaints that do not 'radically alter the scope and nature

of the case.'" *Smith v. Cafe Asia*, 598 F. Supp. 2d 45, 48 (D.D.C. 2009) (citation and internal

quotations omitted). With respect to an amendment being futile, "a district court may properly

deny a motion to amend if the amended pleading would not survive a motion to dismiss." *In re

Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010).

## III. DISCUSSION

In seeking summary judgment, DOJ argues that it conducted an adequate search under both FOIA and the Privacy Act, properly withheld records under certain FOIA and Privacy Act exemptions, and has no obligation to further segregate withheld material. In response, Plaintiff argues that the agency's search was inadequate, that DOJ improperly applied the relevant exemptions, and that DOJ has failed to release the parts of responsive records not properly withheld under one of the disclosure exemptions. In opposing Plaintiff's Motion to Amend Complaint, DOJ argues that the proposed amended complaint will cause undue delay, fundamentally alter the scope of the suit, and likely be futile. The Court will address these arguments in turn.

### A.  Adequacy of FOIA Search

The adequacy of an agency's search for records in response to a FOIA request is measured by a standard of reasonableness and depends on the individual circumstances of each case. *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). The question is not whether responsive documents may exist, but whether the search itself was adequate. *Steinberg v. Dep't of Justice,* 23 F.3d 548, 551 (D.C. Cir. 1994) (citations omitted). There is no requirement that an agency search every record system, but the agency must conduct a good faith, reasonable search of those systems of records likely to possess the requested information. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

To establish that an adequate search was conducted, agencies may and often do rely on affidavits in support of their motions for summary judgment. *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). An agency's declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and

discoverability of other documents." *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal citation and quotation omitted). The declarations should "set[ ] forth the search terms and the type of search performed, and aver[ ] that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68. Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA. *See Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). Plaintiff challenges both the adequacy of the affidavit submitted by the agency and the adequacy of the underlying search itself. Plaintiff's arguments are unavailing.

In responding to Plaintiff's request, the Criminal Division searched two records systems: (1) "[the] OEO database used to track federal prosecutors' requests for permission to apply for court-authorization" to conduct Title III wiretaps, and (2) the archived email system maintained by the Criminal Division's Information Technology department. Sprung Decl. ¶ 11.

The Title III database contains documentation regarding each Title III application presented for court approval. Any prosecutor seeking court authorization for a Title III application must first obtain approval from DOJ's Criminal Division. The prosecutor must submit the request to OEO's Electronic Surveillance Unit ("ESU"), which reviews the request for compliance with Title III. Sprung Decl. ¶ 13. An ESU attorney then submits to the Assistant Attorney General for the Criminal Division ("AAG") an action memorandum discussing whether the prosecutor's request meets the requirements of Title III. Sprung Decl. ¶¶ 13-14. If the AAG approves the request, the prosecutor's application, supporting affidavits from law enforcement agents, and the action memorandum are uploaded to the Title III tracking database. *Id.* Because Plaintiff "requested records relating to DOJ's approval of electronic surveillance of certain telephone numbers, any responsive records would almost certainly be located in the database

specifically designated for this purpose." *Ellis v. United States Dep't of Justice*, No. CV 13-2056 (JEB), 2015 WL 3855587, at *3, --- F. Supp. 3d. --- (D.D.C. June 22, 2015). The agency searched this database for records containing the specified telephone number and the name "Juan Gordon." *See* Sprung Decl. ¶ 16.

DOJ also searched its archived email system, which automatically stores all emails more than 30 days old that are sent or received by Criminal Division employees. Sprung Decl. ¶ 17. DOJ searched the system for correspondence between "the attorney who reviewed the requests to do the wiretapping at issue in this case and the prosecutors who submitted the requests" during "the time period during which these attorneys were in communication with each other." Sprung Decl. ¶ 19.

Defendants argue that the agency searched the two records systems that would contain information responsive to Plaintiff's request and that this search was "conducted in good faith, … reasonable[,] and complete." Sprung Decl. ¶ 20. Plaintiff nevertheless contends that the search was inadequate because DOJ did not conduct its FOIA search until after the lawsuit was filed and because the search was unreasonable and conducted in bad faith. The Court turns to these contentions.

First, while Plaintiff is correct that the agency violated FOIA by failing to conduct a search until after the suit was filed, that result has no legal consequence in this case. Most importantly, the delay does not entitle Plaintiff to any records. *See Ellis*, 2015 WL 3855587, at *4. While the delay means that the agency may not raise an exhaustion defense, the agency has not done so here. *See Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 184 (D.C. Cir. 2013). In addition, the agency's delay does not give rise to monetary

damages because it is well-settled that monetary damages are not available under FOIA. *See Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 777 (D.C. Cir. 2002).

Second, Plaintiff alleges that the search was "inadequate, insufficient, unreasonable, and conducted in bad faith." Pl.'s Opp'n 8. This position is unpersuasive. The agency, through the declaration submitted, has detailed which databases were searched, why those databases were searched, and what documents were located. *See* Sprung Decl. ¶¶ 22-21. The agency searched "the two records systems that would contain information responsive" to Plaintiff's request. Sprung Decl. ¶ 20. The agency has sustained its burden of justifying its response to Plaintiff's request by means of detailed affidavits, and Plaintiff does not provide any contradictory evidence. *See Multi Ag Media*, 515 F.3d at 1227.

Plaintiff's argument that DOJ should have searched additional databases is similarly unavailing. Plaintiff argues that DOJ should have also searched two databases maintained by FBI—namely "ELSUR" and "CRS"—and another unidentified Executive Office of the U.S. Attorney ("EOUSA") database. *See* Pl.'s Opp'n 13. Plaintiff, however, submitted his original FOIA request only to the Criminal Division—and not to the FBI or EOUSA. *See* Defs.' Mot. Ex. A at 1. Per FOIA regulations, requests must be sent "directly to the FOIA office of the component that maintains the records being sought." 28 C.F.R. § 16.3(a)(1); *see also Dugan v. Dep't of Justice*, No. 13-2003, 2015 WL 1090323, at *5 (D.D.C. Mar. 12, 2015) (finding that a FOIA suit against DOJ did not extend to component agencies EOUSA and Bureau of Prisons). If Plaintiff was uncertain about the location of the records he sought, he could have sent his request, per FOIA regulations, to DOJ's catch-all "FOIA/PA Mail Referral Unit," which would have then forwarded the request to the appropriate components. 28 C.F.R. § 16.3(a)(1). Accordingly, because the above databases are not within the Criminal Division's control,

Plaintiff may not seek relief regarding searches—or the lack therefore—of those other databases in this action.

Finally, Plaintiff argues that the agency acted in bad faith by conducting its search nearly 14 month after initially receiving his request. Pl.'s Opp'n 12. However, in determining whether conduct rises to the level of bad faith, "[c]ourts routinely find that delays in responding to FOIA requests are not, in and of themselves, indicative of agency bad faith." *Skurow v. U.S. Dep't of Homeland Sec.*, 892 F. Supp. 2d 319, 326 (D.D.C. 2012); *see also Iturralde v. Comptroller of the Currency,* 315 F.3d 311, 315 (D.C. Cir. 2003). Because the only evidence Plaintiff offers of bad faith is agency delay, the Court concludes summary judgment for the agency is appropriate regarding the adequacy of the FOIA search.

## B.  Applicability of Exemptions 5, 6, and 7(C)

Defendants invoke FOIA exemptions 5, 6, and 7(C) with respect to the documents withheld. Plaintiff argues that the agency improperly applied those exemptions. Upon a careful review of the affidavit and *Vaughn* Index submitted by the agency, the Court finds that the agency properly applied these exemptions to each of the withheld documents.

### 1.  Exemption 5

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 includes the attorney work-product privilege and the deliberative process privilege. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980). In this case, DOJ relies on the attorney work-product privilege for all withheld records, and also relies on the deliberative process privilege for a significant subset of records. The Court now evaluates DOJ's assertion of these privileges.

### a. The Attorney Work-Product Privilege

"The attorney work-product prong of Exemption 5 extends to 'documents and tangible things that are prepared in anticipation of litigation or for trial' by an attorney." *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 221 (D.D.C. 2012) (quoting Fed. R. Civ. P. 26(b)(3)(A)). The work-product privilege is relatively broad, encompassing documents prepared for litigation that is "foreseeable," even if not necessarily imminent. *See id.* When reviewing a withholding under the work-product prong, the Court must examine "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *FTC v. Boehringer Ingelheim Pharms. Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015) (citation and internal quotation marks omitted). "For a document to meet this standard, the lawyer must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable." *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998). "It follows that, in order for the Government to discharge its evidentiary burden, it must (1) provide a description of the nature of and contents of the withheld document, (2) identify the document's author or origin, (3) note the circumstances that surround the document's creation, and (4) provide some indication of the type of litigation for which the document's use is at least foreseeable." *Ellis*, 2015 WL 3855587, at *6 (citing *In re Sealed Case*, 146 F.3d at 884).

The Criminal Division withheld the following seven categories of documents pursuant to the attorney work-product privilege in this case:

1) Prosecutors' requests for permission to apply for court-authorization to intercept wire communications, including applications, affidavits of law enforcement agents, and proposed court orders;

2) Office of Enforcement Operations (OEO) Title III System Logging Notes indicating that OEO has received a request from a prosecutor for permission to apply for a Title III order with respect to specified telephone numbers;

3)  Email messages from Electronic Surveillance Unit (ESU) to Assistant United States Attorneys (AUSA) acknowledging receipt of the AUSA's Title III application;

4)  Email messages between the prosecutor making the request and the ESU attorney assigned to review it, in which the attorneys discuss the ESU review process, edits, revisions, etc.;

5)  Action memoranda from OEO to the Assistant Attorney General (AAG) recommending approval of prosecutors' request;

6)  Authorization Memorandums from the AAG to OEO advising that the prosecutor's request has been approved and an attached copy of the AG's delegation of authority to the AAG; and

7)  Letters signed by Deputy AAG's on behalf of the AAG to a U.S. Attorney advising that the AAG has approved the prosecutor's request to apply for a Title III order.

Defs.' Mot. at 7 (citing Sprung Decl. ¶ 24).

DOJ thoroughly explained in both its declaration and *Vaughn* Index why these documents were appropriately withheld as attorney work-product. *See* Sprung Decl. ¶¶ 24-26; Sprung Decl., Ex. 3 ("*Vaughn* Index") 1-21; *cf. Ellis*, 2015 WL 3855587, at *6. First, DOJ described the nature and contents of the withheld documents. *See, e.g.*, *Vaughn* Index 1 (describing the withheld record as "a request by an AUSA to OEO for permission to apply for a Title III order concerning mobile tel. no. 412–586–8769 and other numbers. It was accompanied by drafts of the application, affidavit, and proposed orders."). Second, it identified the documents' origins. *See, e.g.*, *id.* ("An AUSA prepared this document and submitted it to ESU as part of the wiretap application process."). Third, it described the investigative circumstances around their creation. *See, e.g.*, *id.* at 2 ("[The] action memorandum … includes the name of the subject of the investigation … [and] the names of those individuals whose conversations have already been intercepted."). Finally, it identified the foreseeable criminal prosecution for which the documents were created. *See, e.g.*, *id.* (document was prepared in anticipation of "a criminal prosecution of

the individuals allegedly involved in the criminal activity that was evidenced by the court-ordered interceptions").

In short, these types of documents constitute attorney work-product, and their disclosure would risk putting DOJ's lawyers' thought processes and strategy on public display. *See Ellis*, 2015 WL 3855587, at *7. Indeed, other courts in this district have concluded that wiretap memoranda and other intra-agency discussions regarding wiretapping were protected as attorney work-product. *See, e.g.*, *Gov't Accountability Project v. Dep't of Justice*, 852 F. Supp. 2d 14, 26 (D.D.C. 2012); *Wolfson v. United States,* 672 F. Supp. 2d 20, 30 (D.D.C. 2009). The Court notes that, while the second and third categories of documents listed above—electronic notices confirming receipt of the Title III application—may appear to have a quasi-administrative character, they are still records compiled in anticipation of a specific criminal prosecution, and courts in this District have held that the work product exemption protects such records. *See Ellis*, 2015 WL 3855587, at *7; *White v. Dep't of Justice*, 952 F. Supp. 2d 213, 219 (D.D.C. 2013).

### b.  The Deliberative Process Privilege

The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks and citation omitted). It recognizes "that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them." *Id.* at 8-9 (internal quotation marks and citations omitted). The privilege is designed to "protect the executive's deliberative processes—not to protect specific materials." *Dudman Commc'ns Corp. v. Dep't of Air Force*,

815 F.2d 1565, 1568 (D.C. Cir. 1987). To qualify for protection under the privilege, materials must be "both 'predecisional' and 'deliberative.'" *Pub. Citizen, Inc. v. Office of Mgmt. and Budget*, 598 F.3d 865, 874 (D.C. Cir. 2010) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). A document is predecisional "if it was generated before the adoption of an agency policy and deliberative if it reflects the give-and-take of the consultative process." *Judicial Watch, Inc. v. Food & Drug Admin.,* 449 F.3d 141, 151 (D.C. Cir. 2006) (internal quotation marks and citation omitted).

The agency withheld the following three categories of documents pursuant to the deliberative process privilege in this case:[3]

1)  Agent Title III affidavits;

2)  Action memorandums from OEO to the AAG recommending approval of prosecutors' Title III requests; and

3)  Email messages between the prosecutor making the request and the ESU attorney assigned to review it, in which the attorneys discuss the ESU review process, edits, revisions, etc.

Defs.' Mot. at 11 (citing Sprung Decl. ¶ 27). Upon review of the affidavit and *Vaughn* Index submitted by the agency, the Court finds that the agency has made an evidentiary showing sufficient to sustain its reliance on the deliberative process privilege with respect to each of the challenged documents. As succinctly explained in the affidavit submitted by Defendants, the deliberative process privilege applies to each document because each was:

1)  created before the making of an official decision, *i.e.*, whether to approve a prosecutor's request for permission to apply for a Title III order;

2)  a direct part of the decision-making process, in that they reflect analysis, recommendations, opinions, and deliberations that were central to the official decision-making process; and

---

[3] As noted above, these documents are a subset of the documents that the agency withheld pursuant to the attorney work-product privilege.

3)  submitted by a decision-maker's subordinate to a decision-maker pursuant to a process that is required by Title III and internal Criminal Division policy.

Sprung Decl. ¶ 29. The Court finds that all of the records for which the agency asserts the deliberative process exception were properly withheld because they are documents that would naturally "reflect[] the give-and-take of the consultative process" occurring within the agency in connection with the decision to authorize the electronic surveillance of a telephone number. *Judicial Watch, Inc.*, 449 F.3d at 151.

## 2.  Exemptions 6 and 7(C)

Defendants invoke FOIA Exemptions 6 and 7(C) with respect to a subset of the documents withheld. Plaintiff argues that these exemptions were improperly applied. Pursuant to Exemption 6, an agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Pursuant to Exemption 7(C), an agency may withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information … could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). "The courts have construed [these] provision[s] as permitting exemption if the privacy interest at stake outweighs the public's interest in disclosure." *Nation Magazine, Wash. Bureau v. U.S. Customs Service*, 71 F.3d 885, 893 (D.C. Cir. 1995). As the records at issue in this case were compiled for law enforcement purposes as required for Exemption 7(C), the Court has "no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." *Roth v. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

DOJ invoked Exemption 7(C) for records containing the names of the ESU and OEO attorneys involved in the processing of the Title III request at issue. *See* Sprung Decl. ¶ 27. Plaintiff has not demonstrated, nor does the record disclose, any public interest that favors disclosure of the withheld information. Plaintiff's personal desire for information is irrelevant, and the fact that he seeks information for private purposes related to his criminal trial is not a proper basis for disclosure under FOIA. *See Mendoza v. Drug Enforcement Admin.*, 465 F. Supp. 2d 5, 12 (D.D.C. 2006) (agency properly invoked Exemption 7(C) to protect identities of government employees participating in prosecution of plaintiff); *Taylor v. U.S. Dep't of Justice*, 268 F. Supp. 2d 34, 36 (D.D.C. 2003) ("The courts have consistently refused to recognize any public interest in disclosure of information to assist a convict in challenging his conviction.") (citation and internal quotations omitted). Plaintiff is correct, however, that Exemption 7(C) would likely only apply to the names and personal information of the government employees. Accordingly, the Court turns now to this issue of segregability.

## C.  Segregability

Plaintiff argues that DOJ has not sufficiently segregated out and released parts of the withheld records that are not eligible for one of the exemptions discussed above. *See* Pl.'s Opp'n 14-15. "FOIA § 552(b) requires that even if some materials from the requested record are exempt from disclosure, any 'reasonably segregable' information from those documents must be disclosed after redaction of the exempt information unless the exempt portions are 'inextricably intertwined with exempt portions.'" *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (citations omitted).

DOJ "reviewed each page of the material deemed responsive to Mr. Gordon's request to determine whether there was any non-exempt information that could be reasonably segregated

and released," and DOJ determined that there was "no additional segregable non-exempt information." Sprung Decl. ¶ 36. Importantly, "[i]f a document is fully protected as work product, then segregability is not required." *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 371 (D.C. Cir. 2005). Accordingly, because the Court finds that all of the records at issue were properly withheld as work product pursuant to Exemption 5, no further segregability analysis is necessary, and the Court concludes that the agency fulfilled its segregability obligations.

### D. Privacy Act Claim

In his Opposition, Plaintiff contends that DOJ failed to conduct a search under the Privacy Act, 5 U.S.C. § 552a. Plaintiff's argument fails because the adequacy of a search under FOIA and the Privacy Act is examined under the same standard. *See Chambers v. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009). Accordingly, because the agency conducted an adequate search under FOIA, as discussed above, the search also satisfies the requirements of the Privacy Act. *See Ellis*, 2015 WL 3855587, at *5.

Although Plaintiff does not explicitly challenge the applicability of Privacy Act Exemption (j)(2), he does use "Privacy Act Exemption (j)(2)" as the heading for his cursory argument that the agency never conducted a Privacy Act search. The Court briefly considers the applicability of that exemption. Defendants invoke Exemption (j)(2), which "protects documents that are maintained by law-enforcement agencies for criminal investigations and that contain personal identifying information," with respect to both databases at issue in this litigation. *Cavezza v. U.S. Dep't of Justice*, No. CV 15-182 (JEB), 2015 WL 4148706, at *3 (D.D.C. July 9, 2015). In their briefs, Defendants do not distinguish between the two databases searched—the Title III database and the Criminal Division email archives—and characterize both as systems of

records that were exempted pursuant to exemption (j)(2). *See* Def.'s Mot. at 6-7 (citing 28 C.F.R.
§ 16.91(m)); Defs.' Reply at 4. Plaintiff does not challenge this characterization. With respect to
the Title III database, the Court agrees with this characterization. The agency explicitly exempted
the database from the access provisions of the Privacy Act pursuant to 5 U.S.C. § 552a(j)(2), *see*
28 C.F.R. § 16.91, and the Court concludes that the records in this database relevant to Plaintiff's
request meet the requirements of (j)(2). With respect to the second database at issue, the archived
email system, it does not appear that the agency has explicitly exempted the email archived
pursuant to Exemption (j)(2). *See* 28 C.F.R. § 16.91; 52 Fed. Reg. 47,192, 47,198-99 (Dec. 11,
1978). Moreover, in the Sprung Declaration in support of Defendants' motion, declarant only
states that the *Title III database* has been exempted pursuant to exemption (j)(2) and is silent
about the email database. *See* Sprung Decl. ¶¶ 22-23. Nonetheless, while Defendants state in
their brief that the email archive is a system of records, nothing in the Sprung Declaration or
elsewhere in the record suggests that the email archive is, in fact, a system of records subject to
the disclosure provisions of the Privacy Act. Moreover, courts within this District have
consistently held that similar email archives are not "systems of records" under the Privacy Act
because they are not indexed by personal identifier. *See, e.g.*, *Mobley v. CIA*, 924 F. Supp. 2d 24,
56 (D.D.C. 2013); *Krieger v. U.S. Dep't of Justice*, 529 F. Supp. 2d 29, 42-43 (D.D.C. 2008); *see
also* 5 U.S.C. § 552a(a)(4) (defining "system of records" as "a group of any records under the
control of any agency from which information is retrieved by the name of the individual or by
some identifying number, symbol, or other identifying particular assigned to the individual").
Accordingly, the Court concludes that Exemption (j)(2) is properly invoked insofar as it is
applicable, and that the agency has satisfied its obligations under the Privacy Act.

**E.  Motion to Amend**

Finally, Plaintiff moves to amend his Complaint to add defendants and to add claims

under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388

(1971); the Federal Tort Claims Act (FTCA); 42 U.S.C. § 1985(3); and 18 U.S.C. § 2520. DOJ

opposes Plaintiff's motion on the grounds that adding Plaintiff's proposed claims at this time

would (1) unduly delay and fundamentally alter the nature of the suit and (2) likely be futile. The

Court concludes that leave to file the proposed amended complaint is not warranted at this time.

First, Plaintiff's proposed new claims would unduly delay and substantially alter the

scope and nature of this FOIA action. Unlike FOIA actions, which only can be brought against a

federal agency, *Bivens* requires "a plaintiff to plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*,

556 U.S. 662, 676 (2009). Plaintiff proposes to add over twenty individual defendants who are

not parties to the original FOIA suit. Such a significant change in the scope and nature of the

action weighs heavily against granting Plaintiff's request to amend. In addition, *Bivens*

defendants must be served with process in their individual capacity, *see Simpkins v. D.C. Gov't,*

108 F.3d 366, 369 (D.C. Cir. 1997), which would unduly delay these proceedings against the

DOJ.

Second, amendment of Plaintiff's Complaint would likely be futile. Venue would be

improper with respect to the *Bivens*, section 2520, and FTCA claims. *Bivens* actions and claims

pursuant to section 2520 must be litigated in the judicial district where the defendants are located

or where the misconduct occurred. *See* 28 U.S.C. § 1391(b). FTCA claims against the United

States must proceed "only in the judicial district where the plaintiff resides or wherein the act or

omission complained of occurred." 28 U.S.C. § 1402(b). Plaintiff locates the alleged wrongdoers

and the alleged misconduct in the "Western District of Pennsylvania," and Plaintiff is

19

incarcerated in Youngstown, Ohio. *See* Mot. to Am. 5, 7. Accordingly, this Court sitting in the District of Columbia would not be the proper venue for litigating these proposed new claims.[4]

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Defendants conducted an adequate search; properly withheld records under Exemptions 5, 6, and 7(C); satisfied the segregability requirements of FOIA; and satisfied their obligations under the Privacy Act. The Court also concludes that Plaintiffs' Amended Complaint would cause undue delay, fundamentally alter the nature of the suit, and likely be futile. Accordingly, Defendants' [6] Motion for Summary Judgment is GRANTED, and Plaintiff's [18] Motion to Amend Complaint is DENIED. This case is dismissed in its entirety.

An appropriate Order accompanies this Memorandum Opinion.

Dated: July 31, 2015

                                      /s/
                                     COLLEEN KOLLAR-KOTELLY
                                     United States District Judge

---

[4] With respect to the section 1985(3) claim, Defendants suggests it would be futile as well, but they do not go any further than stating that section 1985 "'is a purely remedial statute, providing a civil cause of action when some otherwise defined federal right—to equal protection of the laws or equal privileges and immunities under the laws—is breached by a conspiracy in the manner defined by the section.'" Defs.'s Mot. at 8 n.3 (quoting *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 376 (1979)). However, the Court notes that this claim would be futile as well because it fails to allege any facts regarding an agreement to violate Plaintiff's rights. *See Bush v. Butler*, 521 F. Supp. 2d 63, 68 (D.D.C. 2007); *see also Atherton v. D.C. Office of Mayor,* 567 F.3d 672, 688 (D.C. Cir. 2009) (stating elements of section 1985(3) claim).